Howei/Ii, J.
This suit is brought on a warrant drawn by the comptroller on the treasurer of the city, to the order of and endorsed by E. A. Patterson & Co., for $7,981 56, on 22d May, 1862, payable eighteen months thereafter, with six per cent, interest from date, and protested at maturity, November 22d-25th, 1863, for non-payment.
The city, besides the general denial, specially denies the existence of any ordinance authorizing the comptroller to draw the warrant sued on, or if there be such ordinance, that it was passed by a lawful majority of the Board of Common Council, or that any provision is made according to law to pay such warrant; denies further, the legality of the proceedings of the Common Council, and the acts of the Finance Committee, out of which said warrant originated, and asks judgment annulling the warrant, and against the plaintiff for $119,586 46, amount of his twenty-four promissory notes, given for the lease of the third section of the wharves, and improperly surrendered to him.
Judgment was rendered annulling the warrant sued on, declaring the said notes properly returned to plaintiff, and condemning him to return to the city the five warrants (including the one in suit) amounting to $31,926 23, given to plaintiff in settlement of the wharf contract, and in default thereof to pay said sum, with interests and costs, from which he appealed.
Since the appeal plaintiff has died, and his widow has been made
*104 The ordinances or resolutions introduced, as authorizing the warrant, are No. ¡3(133, approved June 8th, 1861, No. 5978, approved March 20th, 1862, and No. 6085, approved May 14th, 1862.
By the first of these (5683) the contract of lease was so changed as to make the city guarantee to the lessee, the plaintiff, that his revenues for the year, 1861, cut off by the war and blockade, shall be the same as the average revenues of the two previous years (1859 and 1860) “deducting at the rate of $4,000 per anmtm, for less amount of repairs required and profit that might be realized,” and the deficit in said revenues to be deducted from the notes of the lessee falling due thereafter; and the mayor was authorized to sign a notarial act in accordance therewith, which was executed and signed on 26th June, 1861.
By the second (5978) the Finance Committee was instructed to make a settlement with the lessees of the city wharves, agreeably to resolution No. 5631, approved June 1st, 1S61, and which is similar to No. 5633, but refers to other lessees.
By the third (6035) the mayor is authorized to cancel all the leases of the wharves, with the consent of the lessees. The Finance Committees were authorized to settle with the said lessees, according to resolutions Nos. 5631 and 5633; and the Committees of Streets and Landings, and the surveyor authorized to take charge of the wharves and levees; in pursuance of which plaintiff executed a notarial act on 26th May, 1862, consenting to the canceling of the act of lease to him passed on 31st August, 1858, which was to continue until 30th June, 1863, and acknowledging the receipt from the Finance Committee of the sum of $31,926 24, in full of all claims which he had against the city of New Orleans arising from said lease; which payment it seems consisted of five warrants, two payable in six, and the others respectively in twelve, eighteen and twenty-four months from 22d May, 1862, the one at eighteen months is the one in suit.
It is proven that the settlement thus authorized and resulting in giving the said warrants, was made ou 21st May, 1862, between parlies from the comptroller’s office and some of the Finance Committee; that the city comptroller and the proprietor of the official journal of the city were partners of plaintiff in the lease of the wharves, and of-course in the fruits of the above settlement; and that they and two others were authorized by resolution of the Council to sign the act canceling tho lease, because of the absence of their copartner, the plaintiff.
The 21st section of the city charter (1S5G) prohibits any officer of" the corporation from being directly or indirectly interested in any work, business or contract, the expense, price or consideration of which is paid from the city treasury.
By the original contract the plaintiff paid $59,793 06 per annum, in monthly instalments, and made all necessary repairs to the wharves and landings for the privilege of collecting the revenues thereof in the third section, the average receipts of which in 1859 and 1860 were $113,091 90 per year, leaving $53,298 84 for cost of repairs, expenses and profits annually. By the second contract, plaintiff was allowed $4,000 annually for repairs and profits, and the guarantee that his receipts should be $113,091 90, the difference between which two sums should be deducted *105 from, his notes falling due after the date of the contract, June 26th, 1861.
But by the settlement the amount of the said notes was deducted from said difference — not the difference from the notes — and the city obligated to pay plaintiff the remainder, which is clearly an obligation without a legal consideration, and one which the -Finance Committee were not authorized to assume or impose.
Admitting the right of the Common Council to make the change in the original contract, in the manner in which it was done, upon which it is unnecessary to express an opinion, we think, under no legal construction, can it be inferred that the city was to guarantee to the plaintiff any sum beyond the amount of Ms notes, less the $4,000 to be deducted.
The Common Council is not vested with authority to guarantee that contractors shall make money, under all circumstances, out of their contracts with the corporation.
No such use of the public funds is contemplated.
We think, however, the lower Court erred in rendering judgment for the return of the five warrants or the payment of their amount by plaintiff, as no such issue was made by the pleadings.
It is therefore ordered that the judgment of the lower Court be reversed, and it is now decreed that there be judgment against plaintiff and in favor of defendant, annulling the warrant or draft sued on, with costs in the lower Court, costs of appeal to be paid by defendant.